UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

## CASE NO. 08-23301-CIV-KING

INTEGRATED SECURITY SERVICES,

      Plaintiff,

v.

SKIDATA, INC.,

      Defendant.

_____/

## FINAL ORDER OF DISMISSAL

THIS CAUSE comes before the Court upon the Defendants' Motion to Compel

Arbitration or in the Alternative Motion to Dismiss and Supporting Memorandum of Law

(D.E. #7), filed January 6, 2009. On January 28, 2009, the Plaintiff filed its Response

(D.E. #14). On February 6, 2009, the Defendants filed its Reply (D.E. #15).

## I. BACKGROUND

The Plaintiff initially filed this action in state court for tortious interference with a

contractual relationship and defamation per se. *See* D.E. # 1, Amended Compl. The

Plaintiff alleges that it entered into a Purchase and Distribution Agreement

("Agreement") with the Defendant and gained the non-exclusive right to distribute the

Defendant's parking-and-revenue-collection equipment in South Florida. *See id.* at ¶¶ 8,

9. Furthermore, the Plaintiff alleges that the Defendant terminated the Agreement, which

prevented the Plaintiff from meeting its obligations under a separate contract that it had

with The Port of Miami. *See id.* at ¶¶ 12, 16. The Defendant allegedly began subsequent

negotiations with The Port of Miami to obtain the contract for its parking-and-revenue-collection needs that were no longer being met by the Plaintiff. *See id.* at ¶ 14. Finally, the Plaintiff alleges that the Defendant made (or caused to be made) untrue written and oral communications to the Port of Miami with regard to (1) the Plaintiff's ability to properly exercise its lawful business and trade and (2) the Plaintiff's ability to satisfy the terms of the Agreement. *See id.* at ¶¶ 32, 33. On November 26, 2008, the Defendant removed the action to this Court. *See* D.E. #1, Notice of Removal. Subsequently, the Defendant filed the instant Motion. *See* D.E. #7.

## II. LEGAL STANDARD

Under the Federal Arbitration Act, a district court must grant a motion to compel arbitration if it is satisfied that the parties agreed to arbitrate the underlying issue. *See* 9 U.S.C. § 3. This is an effort to implement "the strong federal policy in favor of enforcing arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 740 U.S. 213, 217 (1985). In reviewing a motion to compel arbitration, a district court must consider three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived.[1] *See, e.g., Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004).

## III. DISCUSSION

The Plaintiff first asserts that no valid written agreement to arbitrate exists because

---

[1]This third factor regarding whether the right to arbitrate was waived is not at issue between the parties and, therefore, is not further discussed.

the Agreement—which contains, *inter alia*, the arbitration clause—is allegedly invalid as unconscionable. However, the undersigned concludes that the Plaintiff's assertion fails to remove the dispute from the realm of arbitration. In *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 449 (2006), the United States Supreme Court held that "a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause, must go the arbitrator." The High Court reasoned that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance" because "as a matter of substantive federal arbitration law, an arbitration provision is severable[2] from the remainder of the contract." *Id.* at 445-46. In its Response, the Plaintiff does not assert that the arbitration clause is invalid due to some defect particular to that clause but, instead, that the entire Agreement is invalid because it is unconscionable. This is precisely the type of issue that—according to the High Court in *Cardegna*—should be decided by an arbitrator in the first instance.

   With regard to the second factor, the Plaintiff asserts that its tortious-interference-with-a-contractual-relationship and defamation-per-se claims are not arbitrable issues. The Plaintiff alleges that the two claims are wholly unrelated to the contractual relationship and, even assuming that there was an agreement to arbitrate, that agreement does not extend to these two claims. The undersigned has considered the recent decision

---

   [2]This is consistent with the express terms of the Agreement in the instant action: "To the Extent that a provision of this Agreement is deemed unenforceable, the balance of it shall remain in full force and effect." D.E. #8, Exhibit "A," pg. 18.

3

in *Hemispherx Biopharma, Inc. v. Johannesburg Consolidated Investments*, 553 F.3d
1351 (11th Cir. 2008), in which the Eleventh Circuit held that the test to determine
whether the claims alleged in the complaint were covered by the underlying arbitration
agreement was based upon foreseeability. *See id.* at 1366. Simply put, "if the defendant
could have been engaged in the allegedly tortious actions even if it had no contractual
relationship with the plaintiff, then the dispute is not an immediate, foreseeable result of
the performance of the contractual duties" and, thus, the claims are not arbitrable. *Id.*
However, this test does not apply to the instant action because the Agreement uses
broader language[3] than that language which existed in the underlying agreement in
*Hemispherx.*[4] The Eleventh Circuit even recognized that this test would not apply to
language as broad as that which exists in the Agreement in the instant action:

> "This discussion takes place in the context of a class of arbitration
> agreements that use similar language, such as 'arising from,' arising under,'
> 'pursuant to,' and 'arising during' the contract in question. The clause at
> issue in this case uses 'arising out of or pursuant to.' We do not believe
> there is a significant difference between these slightly different
> formulations, but do recognize that substantially broader language in the
> arbitration clause would alter the result of the analysis. *See, e.g., Brown v.*

---

[3]*See* D.E. #8, Exhibit "A," pg. 14 ("A party to this Agreement may not institute a
suit at law or equity regarding any dispute, whether directly or indirectly related or
Collateral to this Agreement. All such claims or disputes, whether between or among the
parties, shall be submitted to arbitration administered by an arbitrator." (emphasis
added)).

[4]*See Hemispherx*, 553 F.3d at 1354-55 ("Any dispute at any time between the
parties hereto arising out of or pursuant to this Agreement or its interpretation,
rectification, breach or termination shall be submitted to and be decided by arbitration."
(emphasis added)).

> *ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000) (discussing arbitration clause covering 'any dispute between them or claim by either [party to the contract] against the other')."

*Id.* at 1366 n.16 (emphasis added). Here, the substantially broader language utilized in the Agreement evidences that the parties contemplated that claims such as those alleged by the Plaintiff in the instant action would be subject to the arbitration clause. Moreover, even assuming that this foreseeability test applies to the instant action, the tort claims of the Amended Complaint seemingly arise out of the Agreement and, therefore, were foreseeable at the time the Agreement was entered into and are within the scope of the arbitration clause. For example, in the allegations asserted under the defamation-per-se claim, the Plaintiff alleges that "the Defendant made or caused to be made written and oral communications to Miami-Dade County - Port of Miami with regard to the Plaintiff, the Plaintiff's ability to properly exercise its lawful business and trade, and the Plaintiff's ability to satisfy the terms of the Agreement." D.E. #1, Amended Compl., ¶ 32 (emphasis added). Therefore, the undersigned concludes that this case should be dismissed and should proceed to arbitration as outlined in the Agreement and its arbitration clause.[5][6][7]

---

[5]The undersigned notes that the termination of the Agreement has no bearing on the right to arbitrate. The Plaintiff relies heavily upon *Foster Wheeler Passaic, Inc. v. County of Passaic*, 630 A.2d 280 (N.J. Super. Ct. App. Div. 1993), to assert the opposite. However, as the Defendant correctly asserts, *Foster* is factually distinguishable from the instant action and, therefore, not persuasive. In *Foster*, the underlying agreement set forth certain rights and obligations that survived a termination of the agreement; however, survival of the arbitration clause was excluded. *See id.* at 284-85. Based solely upon this exclusion, that court "reverse[d] the order directing that plaintiff's claim for preconstruction costs be submitted to arbitration." *Id.* at 285. Unlike the agreement in *Foster*, the Agreement here just generally states that it may be terminated "[w]ithout

waiving any other rights previously accrued." D.E. #8, Exhibit "A," pg. 16. The undersigned concludes that the facts of the instant action are more similar to those of *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243 (1977). In that case, the underlying agreement contained a "broad arbitration clause" and was apparently silent concerning whether any rights survived its termination. *Id.* at 253, 254. The United States Supreme Court held that

> "the parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship. In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication."

*Id.* at 255. Here, the undersigned concludes that the parties expressed—by the terms of the Agreement—that the right to arbitrate would survive termination.

⁶The undersigned notes that the Agreement contains a forum selection clause which states that

> "[e]ach of the parties hereto hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the Superior Court of the State of Jersey or, if jurisdiction exists, at the option of either party, to the jurisdiction of the United States District Court for the District of New Jersey (with regard to the limited matters specifically reserved above for determination by a court), for any action, proceeding or investigation in any court or before any governmental authority (a "Litigation") for <u>actions to compel the arbitration</u> and actions to enforce its award, arising out of or relating to this Agreement and the transactions contemplated hereby (and agrees not to commence any Litigation relating thereto except in such courts)."

D.E. #8, Exhibit "A," pg. 16. The parties have not asserted that, based upon this forum-selection clause, this Court is not the proper forum to make a determination on the merits of this Motion to Compel Arbitration. Rather, the Court—on its own—analyzes the applicability of this clause. After independently researching this issue, the undersigned concludes that this Court should not transfer the case pursuant to the forum-selection clause. First, it should be noted that any transfer pursuant to the forum-selection clause

---

would occur under 28 U.S.C. § 1404(a) which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." (Emphasis added.) This language clearly establishes that such a 1404(a) transfer is permissive, not mandatory. *See Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 2004 WL 3576601, at *2 (N.D. Ga. 2004) ("[T]he forum selection clause is not dispositive, and the court may consider other [1404(a)] factors."). Furthermore, case law establishes that, even when the parties do not request that the forum-selection clause be enforced and the case be transferred, courts may order a 1404(a) transfer *sua sponte. See Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) ("The broad language of 28 U.S.C. s 1404(a) would seem to permit a court to order transfer [s]ua sponte . . . . Cases addressing the question have been surprisingly few, but those that have arisen suggest such power does exist."). While this Court acknowledges that it has the ability to transfer this case *sua sponte*, the undersigned (for the reasons discussed below) declines to transfer the case and, instead, decides the Motion to Compel Arbitration on the merits. First, case law—including a decision arising in the Eleventh Circuit—supports this conclusion. *See Ackerley Media Group, Inc. v. Sharp Elecs. Corp.*, 170 F. Supp. 2d 445, 451 (S.D. N.Y. 2001) ("Sharp has not asked the court to *enforce* the choice of forum clause, and the court declines to transfer this case sua sponte to the district court in Washington."); *Coastal Ref. & Mktg., Inc. v. Callen Corp.*, 1991 WL 131944, at *1 n.4 (S.D. Ala. 1991) ("Neither party has challenged the propriety of this court's exercise of jurisdiction over this case. Upon *sua sponte* consideration of the 'choice of forum' provision, however, the court concludes that it is not bound by that contractual provision where, as here, neither party has moved to enforce the provision."). Second, even assuming this Court were to transfer the case to the United States District Court for the District of New Jersey, that court would also have to apply *Cardegna*—a decision by the United States Supreme Court—which (as previously described) clearly establishes that an arbitrator should address the assertion that the Agreement is unconscionable. Thus, under principles of judicial efficiency, this constitutes another reason why the instant action should not be transferred.

[7]The Defendant asserts, in the alternative, that the claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for the failure to state a claim upon which relief can be granted. However, due to the fact that the case should proceed in arbitration and be dismissed for that reason, the undersigned does not address this alternative assertion for why dismissal is proper.

## IV. CONCLUSION

Accordingly, the Court being otherwise fully advised, it is ORDERED,

ADJUDGED, and DECREED that the Defendant's Motion to Compel Arbitration or in

the Alternative Motion to Dismiss and Supporting Memorandum of Law (**D.E. #7**) be,

and the same is hereby, **GRANTED**.  The Plaintiff is hereby **DIRECTED to proceed to**

**arbitrate this dispute in New Jersey as mandated by the Agreement**.  The instant

action is hereby **DISMISSED**.  The Clerk shall **CLOSE this case**.

DONE and ORDERED in chambers at the James Lawrence King Federal Justice

Building and United States Courthouse, Miami, Florida, this 23rd day of April, 2009.

JAMES LAWRENCE KING
U.S. DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:   *__Counsel for Plaintiff__*

**Barry Adam Postman**
Cole Scott & Kissane
1645 Palm Beach Lakes Boulevard
Mellon National Bank Bldg 2nd Floor
West Palm Beach , FL 33401

**Michael W. Shiver , Jr.**
Cole Scott & Kissane
1645 Palm Beach Lakes Boulevard
Mellon National Bank Bldg 2nd Floor
West Palm Beach , FL 33401

8

## *Counsel for Defendant*

**Jose Guillermo Sepulveda**
Stearns Weaver Miller Weissler Alhadeff & Sitterson
Museum Tower
150 W Flagler Street
Suite 2200
Miami , FL 33130

**Gavin Handwerker**
Nissenbaum Law Group, LLC.
2400 Morris Avenue
3rd Floor
Union, NJ 07083